UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Tyrone THOMAS, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. No. 2:14-06271 (KM) <br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Tyrone Thomas brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). Thomas alleges that he is unable to engage in substantial gainful activity because he suffers from diabetes, as well as back and nerve damage. (R.[1] 270, ECF No. 6)

For the reasons set forth below, the ALJ's decision is AFFIRMED.

I.     **BACKGROUND**

Thomas seeks to reverse or remand an ALJ's finding that he was not disabled from May 11, 2008 through the date of the ALJ's decision, March 7, 2013. Thomas applied for DIB and SSI benefits on January 10, 2011, for a period of disability beginning May 11, 2008. (R. 213) His claims were first denied on June 15, 2011, and again on reconsideration on November 28, 2011. (R. 123, 132) On December 12, 2011, Thomas filed a request for a hearing. (R. 137) On November 19, 2012, a hearing was held, at which Thomas appeared

---

[1]     "R." refers to the pages of the administrative record filed by the Commission as part of her answer. (ECF No. 6)

1

and was represented by counsel. (R. 23) A vocational expert, Rocco Meola, also appeared and testified at the hearing. (R. 74) On March 7, 2013, Administrative Law Judge ("ALJ") Barbara Dunn denied Thomas's application for DIB and SSI benefits. (R. 7–22) On August 13, 2014, the Appeals Council affirmed ALJ Dunn's decision. (R. 1–3) Thomas now appeals that decision.

## II.  DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A), §1382(a)(3)(A).

### a. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual issues, this Court will adhere to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut

3

> it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record substantial evidence which, on the whole, establishes that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see also Bantleon v. Comm'r of Soc. Sec.*, 2010 WL 2802266, at *13 (D.N.J. July 15, 2010). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly'

weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

### b. The ALJ's decision

ALJ Dunn concluded that from May 11, 2008, through March 7, 2013, Thomas was not disabled. (R. 11) ALJ Dunn's determinations may be summarized as follows.

At step one, the ALJ determined that Thomas had not engaged in substantial gainful activity since May 11, 2008, his alleged disability onset date. (*Id.* 15)

At step two, the ALJ found that Thomas had the following severe impairments: "diabetes (uncontrolled); neuropathy; diminished vision; arthralgia; chronic back pain, rule out radiculopathy; and dysthymic disorder." (*Id.* 15)

At step three, the ALJ determined that Thomas's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1 (the "Listings"). (R. 15)

The ALJ then found that Thomas has the residual functional capacity ("RFC") to

> perform sedentary work (lift and carry 10 pounds and push and pull to 10 pounds; stand/walk 2 hours in an 8-hour day; sit 6 hours in an 8-hour day) except that he cannot climb any ladders, ropes or scaffolds, but can climb ramps and stairs frequently. The claimant can balance, kneel, stoop, crouch, and crawl frequently. The claimant requires the use of a cane if walking for more than 10 minutes. He is limited to occasional fine visual acuity. The claimant is limited to simple, routine work and to no more than average production demands.

(*Id.* 17)

At step four, the ALJ determined that, based on his RFC, Thomas is unable to perform any past relevant work. (R. 20) The ALJ found that Thomas's past relevant work was as an adjunct professor, which the vocational expert

testified was considered skilled work, and Thomas was "limited to simple, routine work." (*Id.*) The ALJ noted that Thomas was 42 years old on his alleged disability onset date, which put him in the category of "younger individual age." (*Id.*) The ALJ also found that Thomas "had at least a high school education." (*Id.*) Transferability of job skills was "not material to the determination of disability" because Thomas was not disabled under the Medical-Vocational Rules regardless of transferability of job skills. (*Id.* 20–21)

At step five, the ALJ considered Thomas's "age, education, work experience, and residual functional capacity" and the testimony of the vocational expert, and determined that Thomas could perform jobs that exist in significant numbers in the national economy. (*Id.* 21) As noted above, such a finding at step five requires that benefits be denied.

### c. Thomas's appeal

Thomas argues that the Commissioner's decision is not supported by substantial evidence. Specifically, Thomas argues that the ALJ (1) erred at step three in failing to take into consideration Thomas's impairments in combination in determining that his diabetes had not resulted in end organ damage (Pl. Br.[2] 10–11, 19–23, Dkt. No. 9); (2) likewise erred at step three when she did not consider Thomas's hallucinations in considering the psychiatric listings (*id.* 11, 19–23); (3) did not adequately explain her RFC findings (*id.* 12–19); and (4) failed to take into consideration the vocational expert's testimony regarding the impact an additional 15-minute break would have on eliminating possible jobs for someone with Thomas's RFC (*id.* 14, 18–19). I find, however, that the ALJ's findings do not contain any errors of law or procedure, and are supported by substantial evidence.

---

[2] This brief and the Commissioner's opposition were submitted pursuant to L. Civ. R. 9.1.

### d. Analysis

#### i. *ALJ's step three analysis*

Thomas argues that the ALJ erred at step three in two ways. First, according to Thomas, the ALJ failed to properly consider all of his impairments to determine whether, in combination, they are medically equivalent to one of the Listings. Second, Thomas argues that the ALJ failed to consider his alleged hallucinations.

##### 1. ALJ's consideration of Thomas's ailments in combination

Thomas contends that although the ALJ considered Thomas's impairments individually, she failed to consider his six severe impairments in combination in determining whether those impairments met or were equivalent to one of the listed impairments. (Pl. Br. 22) Thomas takes issue with the ALJ's finding that Thomas's uncontrolled diabetes has not resulted in end organ damage. Thomas points to the ALJ's findings that he suffers from neuropathy and diminished vision, both of which, according to Thomas, should be considered diabetes-related "end organ damage." (*Id.* 10)

The claimant bears the burden of proving that his impairments, whether individually or collectively, equal or meet those listed in Appendix 1. However, "if a claimant's impairment does not match one listed in Appendix 1, the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151–52 (3d Cir. 2008); *see also* 20 C.F.R. § 404.1526(b). The Third Circuit has stated that step three requires the ALJ to perform "an analysis of whether and why [the claimant's individual impairments], or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 119. The ALJ is "not require[d]...to use particular language or adhere to a particular format in conducting [her] analysis"; rather, there must be "a sufficient development of the record and explanation of findings to permit

7

meaningful review." *Jones,* 364 F.3d at 505. Such an explanation requires more than "conclusory statements." *Burnett,* 220 F.3d at 120. Where the ALJ performs a "searching review of the medical evidence" and concludes that no impairments meet the criteria of any listed impairment, the standard is satisfied. *See Klangwald v. Comm'r of Soc. Sec.,* 269 F. App'x 202, 204 (3d Cir. 2008)("After broadly concluding that [the claimant] has no impairment which meets the criteria of any of the listed impairments, the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."); *Johnson v. Comm'r of Soc. Sec.,* 398 F. App'x 727, 734 (3d Cir. 2010 (finding an ALJ's step three determination sufficient where the ALJ "thoroughly examined the medical evidence, compared it to the Listings, and made the dual determinations that (a) none of [the claimant's] impairments were individually equivalent to a Listing, and (b) there was no closely analogous listed impairment for which a combination of impairments was medically equivalent") (citing 20 C.F.R. § 404.1526(b)(3)).

The ALJ here sufficiently developed the record, performed a thorough examination of Thomas's medical records, and explained her findings at step three, permitting meaningful review. Unlike the one-sentence conclusory determination found inadequate in *Burnett,* ALJ Dunn's analysis of Thomas's impairments and medical records occupies some five pages and goes into considerable detail. (*See* R. 15–20) Additionally, it is clear from the decision that ALJ Dunn not only considered Thomas's diminished vision and sensory deficits, but considered them as they related to his diabetes. (*Id.* 16) The ALJ found that the medical records did not reflect any evidence of retinopathy or "any vascular or neurologic complications *involving diabetes.*" (*Id.* 16) (emphasis added). As to sensory loss, ALJ Dunn found that there was "no evidence of neuropathy with significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movement or gait and station...The record does not document any other complications *from diabetes.*" (*Id.*) I therefore reject Thomas's argument

8

that the ALJ considered his ailments, but failed to consider them in combination or in relation to diabetes.

### 2. ALJ's consideration of Thomas's hallucinations

Thomas contends that the ALJ, when she analyzed medical equivalence at step three, failed to consider that Thomas experienced auditory, visual and tactile hallucinations. (Pl. Br. 11) Specifically, Thomas argues that ALJ Dunn erred in finding that Thomas did not meet the criteria for Listing 12.04 (affective disorders) because her decision did not mention paragraph A or C criteria. Thomas also argues that the ALJ erred in failing to consider Listing 12.03 (schizophrenic, paranoid, and other psychotic disorders).

With regard to Listing 12.04, the ALJ found that neither the paragraph B or C criteria were met. In so finding, she did not err by omitting paragraph A in her analysis, because Listing 12.04 can be satisfied in only two ways: "when the requirements in *both* [paragraphs] A and B are satisfied, or when the requirements in [paragraph] C are satisfied." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.04 (emphasis added).

Because the first alternative requires *both* A and B, it was sufficient to find that B did not apply. To satisfy the paragraph B criteria, a claimant's disorder must have resulted in at least two of the following four limitations:

1. Marked restriction of activities of daily living; or
2. Marked deficiencies in maintaining social functioning; or
3. Marked deficiencies in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B.[3] The ALJ carefully analyzed all four. Her analysis of paragraph B is properly supported by the evidence in the record.

---

[3]   A marked limitation is defined as one that is "more than moderate but less than extreme." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, *as long as the degree of limitation is such as to interfere seriously with your*

9

First, ALJ Dunn found that Thomas had only mild restriction in the activities of daily living. (R. 17) That finding was supported by Thomas's own function reports, which noted that Thomas lives independently and engages in ordinary, everyday activities. (*Id.* (citing R. 227–34)) Thomas reported that he spends his days reading, researching, studying, volunteering at church, and participating in church meetings. (R. 227) Thomas prepares light meals for himself (R. 229, 246) and is able to go out alone (R. 230). Thus there is more than substantial evidence to support the ALJ's finding that Thomas has only mild restriction in the activities of daily living.

Second, the ALJ found that Thomas had only mild difficulties in social functioning. (R. 17) There was uncontested evidence that Thomas volunteers at his church and has traveled to South Korea on a mission. (*Id.*) Additionally, Thomas noted on his Function Report that he spends time with others at church and church fellowships 2 to 4 times per week. (R. 231, 248) The ALJ found that Thomas is able to (and in fact, does) function in a social environment, and there is sufficient record support for that finding.

Third, the ALJ found that Thomas had moderate difficulties in concentration, persistence or pace. (R. 17) As to this factor, the evidence pointed in more than one direction, but the ALJ considered and sifted the evidence, resolving conflicts appropriately. The ALJ credited Thomas's testimony that "he can get confused and frustrated in stressful work situations." Likewise, she relied on the medical report of Dr. Fulford diagnosing Thomas with dysthymic disorder and assigning Thomas a GAF of 60. (*Id.*) Thomas notes that he spends his days, in part, reading, researching, studying (which he claims to do "almost every day"), and working on a book he is writing. (R. 227, 230–31, 324) These activities require concentration and persistence. On the other hand, however, Thomas reported that he has issues

---

*ability to function independently, appropriately, effectively, and on a sustained basis."* Id. (emphasis added)

with patience and frustration and can pay attention for only about 15 minutes at a time. (R. 231–32, 249)

As for hallucinations specifically, ALJ Dunn carefully considered Dr. Fulford's report, as well as Thomas's own description of his condition. Dr. Fulford finds that Thomas had no history of psychiatric treatment, lived independently, was "fully oriented," and "had good mental control and concentration." (R. 19, 323–24) Dr. Fulford also notes, however, that Thomas's symptoms "suggest some auditory hallucination experiences" where Thomas "sense[s] that the Lord is speaking" to him; that Thomas experiences visual hallucinations because he sees "oncoming things" and "interpret[s] dreams"; and that Thomas reported tactile hallucinations where he felt someone was tapping him on the shoulder. (R. 324) On examination, however, Thomas denied hearing voices or seeing things that aren't there (his thoughts, he said, are "not like that"). Thomas explained that he has "visions and dreams" about "things that's going to happen," and has experienced such prophetic thoughts since childhood. (R. 66) The ALJ properly considered and balanced all of the foregoing evidence. Her determination that Thomas experiences moderate difficulties in concentration, persistence or pace is supported by substantial evidence.

Fourth, the ALJ determined that Thomas has not experienced any episodes of decompensation of extended duration. (R. 17) She noted that there were no records of the claimant having had any history of psychiatric hospitalizations or treatment. (*Id.*) The Disability Worksheets asked Thomas whether he had seen a doctor or health care professional, received treatment at a hospital or clinic, or had a future appointment for any mental condition; Thomas answered no. (R. 216, 236, 253) When examined by Dr. Fulford, Thomas likewise denied any psychiatric history or psychiatric hospitalization. (R. 323) On examination by the ALJ, Thomas stated that he had only gone to see a doctor for psychiatric issues one time—that time being the Social Security referral to Dr. Fulford. (R. 65–66) Thomas offers no evidence to suggest that he

has suffered from any extended episodes of decompensation. The ALJ's negative finding on this, the fourth and final paragraph B criterion, is supported by substantial evidence.

Because Thomas's impairments did not cause at least two "marked" limitations, or one marked limitation and repeated episodes of decompensation, the ALJ properly found that the paragraph B criteria were not met. It follows, then, without the necessity of examining paragraph A, that the first, "A plus B" alternative was not met.

Turning to the second alternative, ALJ Dunn also properly found that Thomas's impairments did not meet the paragraph C criteria. To meet the paragraph C criteria for Listing 12.04, a claimant must have a

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> > 1. Repeated episodes of decompensation, each of extended duration; or
> >
> > 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> >
> > 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04C.

The ALJ determined that the evidence failed to establish the existence of paragraph C criteria. She relied on undisputed evidence that Thomas lives independently, performs the activities of daily living, and helps at his church. She noted as well that there was no evidence that Thomas required a highly supportive living situation to function. (R. 17) Thomas cites nothing to suggest otherwise.

12

Thomas next argues that the ALJ failed to consider Listing 12.03. Paragraphs B and C of Listing 12.03, however, are identical to those in Listing 12.04. The ALJ's finding that the criteria of Listing 12.04 were not satisfied would necessitate a similar finding as to Listing 12.03. *Compare* 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.03 and § 12.04. At any rate, Thomas offers no separate explanation as to how his symptoms meet the requirements of Listing 12.03.

In sum, I find that ALJ Dunn, at step three, properly considered Thomas's impairments alone and in combination, and also considered his reported hallucinations, to determine if his impairments met or medically equaled the Listings.

### *ii. ALJ's RFC evaluation*

Thomas next argues that the ALJ did not adequately explain her determination of his residual functional capacity, and posits that the RFC is internally inconsistent. (Pl. Br. 12–19) Specifically, Thomas's two contentions are:

(1) that the ALJ does not link Thomas's chronic back pain and ambulatory impairments with the limitation that he "requires the use of a cane if walking for more than 10 minutes" and that he can "stand/walk 2 hours" and can "climb ramps and stairs frequently and balance, kneel, stoop, couch and crawl frequently" (*id.* 12, 18); and

(2) that the ALJ did not explain how Thomas's blurry vision impairment could, on the one hand, be a result of elevated blood sugar, but on the other hand, only affect Thomas (a diabetic) occasionally, so that Thomas was capable of performing jobs that require "occasional fine visual acuity" (*id.* 13, 17).

I find that the ALJ sufficiently analyzed the evidence in the record and explained her RFC findings, which are supported by substantial evidence and are reconcilable with each other.

### 1. ALJ's consideration of Thomas's use of a cane

The ALJ found—inconsistently, says Thomas—that Thomas's chronic back pain and ambulatory impairments require the use of a cane if walking for more than 10 minutes, but also that he can "stand/walk 2 hours" and can "climb ramps and stairs frequently and balance, kneel, stoop, couch and crawl frequently." I find that these findings are supported by the evidence as analyzed and sifted by the ALJ.

Here is the ALJ's full statement of Thomas's residual functional capacity:

> [Ability to] perform sedentary work (lift and carry 10 pounds and push and pull to 10 pounds; stand/walk 2 hours in an 8-hour day; sit 6 hours in an 8-hour day) except that he cannot climb any ladders, ropes, or scaffolds, but can climb ramps and stairs frequently. The claimant can balance, kneel, stoop, crouch, and crawl frequently. The claimant requires the use of a cane if walking for more than 10 minutes.

(R. 17)

In so finding, the ALJ considered the following evidence: (1) Dr. Patel's report noting that Thomas had a normal gait and normal reflexes and sensation; (2) certain records of the Community Health Center at Vauxhall which note back sprain, as well as later records from the same clinic that note no neurological deficits and 5/5 strength in his extremities; and (3) Dr. Kern's report that Thomas's motor testing was inconsistent, that his complaints did not match his ability to get on and off and examination table or to get up from a full squat, that he did not use a cane appropriately, and that his leg strength was normal although he had decreased sensation to light touch over the right big toe. (R. 18)

Dr. Patel noted twice that Thomas walked at a reasonable pace without any walking device. (R. 273, 275) According to Dr. Patel, Thomas had a "normal gait" and normal reflexes and sensations. (R. 273) Dr. Patel also noted that Thomas was able to squat, walk on his heels and toes and had no sensory, reflex or muscle weakness in either the right or left extremities. (R. 275) While

Thomas continually complained of pain or tingling in his lower extremities, physical therapy was helpful to reduce his pain. (R. 305, 307, 309, 311, 313, 315) Dr. Kern noted that while Thomas claimed that he must use an assistive device to ambulate, upon his examination of Thomas, Dr. Kern found that Thomas "ambulates without gross antalgia" and "uses his cane inconsistently and appears very comfortable getting in and out of the chair and on and off the examination table with decreased use and decreased unloading of his cane. He is able to jump on and off the examination table." (R. 330) Dr. Kern also noted that Thomas did not use his cane appropriately and commented that Thomas is "likely able [to ambulate without assistive device] as not using appropriately/not using to unload." (R. 333) Furthermore, Dr. Kern found that Thomas could perform a squat and get out of a squat position without obvious pain. (*Id.*) Dr. Kern concluded that Thomas exhibited "inconsistent motor testing" and "an unusual gait which does not match with his abilities to get on and off the examination table and get up from a full squat without difficulty." (R. 331) Additionally, records from the Community Health Center at Vauxhall reflect that on June 18, 2012, Thomas had 5/5 strength in his extremities. (R. 337) Furthermore, the records reflect that during the relevant time period, Thomas travelled to South Korea where he "did a lot of walking." (R. 311)

On examination, Thomas testified that he would have problems standing or walking without a cane, but that he could stand for seven minutes without a cane and could walk one block. (R. 50-51) He then testified that the cane was not prescribed by a doctor but was rather "a suggestion." (R. 61) He further testified that he sometimes does not use the cane, and that he uses it when his "medication is wearing" off. (R. 62)[4]

---

[4]   The ALJ noted that a treating physician, Dr. Feurdean, stated that Thomas has limitations in such areas as standing, walking, and lifting. She discounted that opinion, however, because Dr. Feurdean "provides no specific details, and his opinion is contradicted by the claimant's activities" as described above. (R. 19) That was a permissible treatment of the evidence. An ALJ is free to credit one medical opinion over another, including that of a treating physician, provided that the ALJ gives reasons, based on the evidence. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06

This evidence supports the ALJ's conclusion as to Thomas's RFC and adequately explains how ALJ Dunn made her determination. Thomas's claim that the findings are inconsistent requires that all of his complaints be taken at face value. As noted by the ALJ and Dr. Kern, however, Thomas's complaints and perceived limitations do not seem to align with his medical examination notes, physical therapy results, or even the activities he chooses to pursue. Thomas's requirement of a cane for walks in excess of 10 minutes, though real, does not require a finding that his infirmity is disabling.

The RFC is thus supported by substantial evidence, and strikes a reasonable balance: it accounts for Thomas's back pain and intermittent use of a cane without being overly conservative in limiting Thomas's functions. Indeed, such limitations would not be supported by the record.

### 2. ALJ's consideration of Thomas's blurry vision

Thomas contends that the ALJ did not adequately explain how Thomas's severe impairment of diminished vision, which the ALJ found to occur only during episodes of high blood sugar (and which Thomas argues should mean "all the time" because Thomas has uncontrolled diabetes), is consistent with the RFC limitation permitting jobs that require "occasional fine visual acuity." The ALJ's findings were permissibly based on her evaluation of the evidence.

ALJ Dunn determined that Thomas's blurry vision occurred during episodes of high blood sugar. That finding was based, in part, on the report of Dr. Patel. Dr Patel noted that although Thomas complained of blurry vision, he was not then wearing glasses and had 20/40 vision in both eyes. (R. 272–73) Dr. Patel could not rule out diabetic retinopathy, but he found "no evidence of any vascular or neurologic involvement from diabetes mellitus." (R. 273) ALJ

---

(3d Cir. 2009); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); *Shalala*, 40 F.3d at 48 (citations omitted) (An ALJ may "properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

Dunn also relied on records from the Community Health Center at Vauxhall which noted "no evidence of retinopathy." (R. 19, 283) Those records also reflect that Thomas complained of blurry vision but that Thomas had "not seen an ophthalmologist despite several referrals in the past." (R. 283, 342) After Thomas did see an ophthalmologist, sometime in 2011, he reported to doctors that the visit was "normal." (R. 337)

Thomas testified that he experienced two episodes of uncontrolled diabetes a week. (R. 42, 47) After receiving Medicaid in March of 2012, Thomas was able to buy insulin which he testified that he took every day. (R. 46) When asked about his eyesight, Thomas testified that he was losing his eyesight, wears glasses, experiences blurriness, and cannot see as well in the dark as he used to. (R. 71)

The vocational expert testified that jobs requiring "fine visual acuity" entail working with very small parts, such as items "smaller than a 10-cent piece." (R. 77) The ALJ determined that Thomas could perform work that required only *occasional* fine visual acuity. By that she meant that fine visual acuity would be necessary from "very little to no more than one third of the time." SSR 83-10. Such a finding is supported by the record. To be sure, the evidence as to Thomas's vision pulls in more than one direction, but the ALJ's resolution of this question lay well within her fact-finding discretion.

### iii. *ALJ's step five determination*

In passing (though not in a separate argument point), Thomas contends that the ALJ impermissibly failed to consider that requiring an extra 15-minute break would rule out Thomas's performance of jobs in the regional and national economy. (Pl. Br. 14) The need for additional breaks was not part of the hypothetical posed to the vocational expert, but was raised on cross-examination at the hearing.[5]

---

5   The vocational expert identified three examples of available jobs performable by a person with Mr. Thomas's impairments: Document prep worker, table worker, and

An ALJ is not required "to submit to the vocational expert every impairment alleged by a claimant. Instead the directive [announced] in *Podedworny* is that the hypothetical posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (quoting *Podedworny*, 745 F.2d at 218). "[T]he ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." *Id.* In short, the ALJ's five-step analysis is a progressive one, each step building on the one before. Here, the hypothetical on which the vocational expert rendered his opinion was based on Mr. Thomas's "age, education, work experience, and residual functional capacity," consistent with the findings of the ALJ. (*See* R. 21)

Where the medical evidence in the record does not support a particular claimed limitation, the ALJ's failure to elicit or analyze vocational expert testimony regarding that unproven limitation is not an error. In *Nichols v. Commissioner of Social Security*, 404 F. App'x 701 (3d Cir. 2010), for example, the Third Circuit examined whether an ALJ properly disregarded vocational expert testimony that no work would be available for an individual with the claimant's RFC who also required additional bathroom breaks. The Court found that because the medical evidence did not establish the need for such additional breaks, the ALJ could exclude that condition from the hypothetical and rely on the expert's response as substantial evidence of the claimant's RFC. *Id.* at 705. Similarly, in *Johnson v. Commissioner of Social Security*, 398 F. App'x 727 (3d Cir. 2010), the Third Circuit considered whether it was appropriate for an ALJ to fail to mention vocational expert testimony in response to a second hypothetical relating to taking frequent breaks where the

---

scale operator. (R. 21, 73) In response to questioning, the expert testified that such jobs require work at a steady production pace of 50-55 minutes per hour, with a lunch break plus two 15 minute breaks, one in the morning and one in the afternoon. (R. 75-76) The question arose as to whether an employee could take additional, unscheduled 15 minute breaks. The expert replied that, absent an employer's "special consideration," that would not be permitted in such a job. (R. 76)

expert testified that no jobs would remain. The Court found that the ALJ failed to consider that testimony for an "obvious" reason: because the RFC assessment did not include the need for claimant to take frequent breaks, such testimony was irrelevant. *Id.* at 736. The Third Circuit therefore held that the ALJ's failure to explicitly discuss such testimony did not render the decision deficient.

Here, the RFC does not include a limitation relating to the need for additional, unscheduled breaks. Nor does the record require the ALJ to have imposed such a limitation in the RFC, which is consistent with and supported by the substantial evidence in the record. It follows that the ALJ's failure to base her opinion on a vocational expert opinion regarding such additional breaks was not erroneous.

### III.   CONCLUSION

For the foregoing reasons, the ALJ's decision is **AFFIRMED**. An appropriate order accompanies this Opinion.

Dated: October 9, 2015

_/s/ Kevin McNulty_
**KEVIN MCNULTY**
**United States District Judge**